■ THE CARLYLE, LLC, Respondent, v BEEKMAN GARAGE LLC et al., Appellants. [19 NYS3d 520]—

Order, Supreme Court, New York County (Joan M. Kenney, J.), entered July 2, 2014, which, insofar appealed from, granted plaintiff's motion for partial summary judgment, denied defendant Quik Park 1633 Garage LLC (Quik Park 1633)'s cross motion for summary judgment, directed an assessment of damages against defendants, and directed plaintiff to file a note of issue and statement of readiness by August 1, 2014, unanimously modified, on the law, to deny so much of plaintiff's motion as sought to dismiss defendants' seventh affirmative defense, and otherwise affirmed, without costs.

The court properly found that the Beekman defendants failed to raise an issue of fact as to whether the garage was rendered partially unusable by casualty. If the repairs to the garage's facade had been necessitated by a casualty—for example, if an earthquake had caused a crack in the facade, or if a violent storm had caused a cornice to fall off—defendants would have known about it. Because article 9 of the lease (fire and casualty) was inapplicable, the court properly found that article 4 applied.

The Beekman defendants' argument that they were partially evicted from the garage is unavailing. "To be an eviction, constructive or actual, there must be a wrongful act by the landlord" (*Barash v Pennsylvania Term. Real Estate Corp.*, 26 NY2d 77, 82 [1970]). Plaintiff's installation of temporary scaffolding as part of its repairs to the garage's facade was not wrongful because it was authorized by the lease (*see e.g. Ernst v Straus*, 114 App Div 19 [1st Dept 1906]; *Bijan Designer for Men v St. Regis Sheraton Corp.*, 142 Misc 2d 175 [Sup Ct, NY County 1989], *affd* 150 AD2d 244 [1st Dept 1989]). As was noted in *Bijan,* "tenants are well advised . . . to specify some limits to the exculpatory clause concerning repairs" (*id.* at 181).

Because the court properly granted plaintiff summary judgment on the first cause of action (for unpaid rent), it also properly granted plaintiff summary judgment on the second and fourth causes of action (for late fees and attorneys' fee, respectively). Plaintiff is entitled to such fees under articles 53 (B) and 19 of the lease, respectively.

Except for the seventh affirmative defense, the motion court properly dismissed defendants' affirmative defenses. For example, because the lease says that the tenant will pay rent "without any set off or deduction whatsoever," the Beekman defendants' claim that plaintiff breached the lease was properly dismissed as an affirmative defense (*see Lincoln Plaza Tenants Corp. v MDS Props. Dev. Corp.*, 169 AD2d 509, 512 [1st Dept 1991]). However, the Beekman defendants may still maintain this claim as a counterclaim (*see id.*). The fifth, sixth, and eighth defenses were properly dismissed because they consist of bare legal conclusions (*see Robbins v Growney*, 229 AD2d 356, 358 [1st Dept 1996]).

The court's dismissal of plaintiff's claim for rent against Quik Park 1633, based on an absence of privity, precludes the striking of the seventh affirmative defense, in which it is claimed that Quik Park 1633 could not be liable for rent because it was not in privity with plaintiff.

However, while Quik Park 1633 cannot be liable for rent under the lease, the motion court properly denied dismissal of the use and occupancy claim against Quik Park 1633. A claim by a landlord against a nonlessee occupant for use and occupancy should not be foreclosed simply because there is a lease covering the premises. The obligations of the lessee arising under the lease are distinct from the obligations of an occupant of premises toward the owner of those premises.

Notwithstanding the general rule that "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter" (*Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 388 [1987]), in the landlord-tenant context, the occupant of premises is liable to the owner of the property for use and occupancy irrespective of the existence of a lease in the name of another entity: "[t]he obligation to pay for use and occupancy does not arise from an underlying contract between the landlord and the occupant[,] [but] [r]ather, an occupant's duty to pay the landlord for its use and occupancy of the premises is predicated upon the theory of quantum meruit, and is imposed by law for the purpose of bringing about justice without reference to the intention of the parties" (*Eighteen Assoc. v Nanjim Leasing Corp.*, 257 AD2d 559, 559-560 [2d Dept 1999] [internal quotation marks and citation omitted]).

Similarly, in *Gateway I Group, Inc. v Park Ave. Physicians, P.C.* (62 AD3d 141 [2d Dept 2009]), the Second Department allowed a landlord to bring claims for use and occupation against

nonsignatories to the lease who allegedly used the premises. The landlord had successfully evicted the lessee and obtained a judgment for unpaid rent; however, because the premises were used by other entities which were interconnected with the lessee but were not parties to the lease, the landlord commenced a second action to recover both the unpaid judgment and posteviction rent from those entities. While some causes of action relied on piercing the corporate veil and oral assignment of the lease to the related defendants, the landlord also sought recovery against the nonlessee occupants on a theory of quantum meruit. The Second Department rejected the argument that the express contract—the lease—precluded recovery on a quantum meruit basis. It explained that because there was no lease between the landlord and those other defendants, causes of action against them for unpaid rent on a quantum meruit basis were permissible (*id.* at 149).

We apply the equivalent reasoning here to allow plaintiff to seek an award of use and occupancy against the nonlessee occupant of the premises.

We have considered defendants' remaining arguments for affirmative relief and find them unavailing. For example, we note that defendants failed, in opposition to plaintiff's summary judgment motion, to request leave to amend their affirmative defenses. We also agree with the motion court that the amount sought by defendants in their counterclaims cannot be more than plaintiff's damages. Concur—Sweeny, J.P., Renwick, Saxe and Gische, JJ. **[Prior Case History: 2014 NY Slip Op 31739(U).]**